UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOANCARE, LLC,
Plaintiff,

-v-

TATA AMERICA INTERNATIONAL CORPORATION and TATA CONSULTANCY SERVICES LIMITED,
Defendants.

26-CV-4783 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff LoanCare, LLC ("Loancare") brings this action against Tata America International Corporation ("TAIC") and Tata Consultancy Services Limited (together, "TCS"), alleging that Defendants breached their contract to provide bankruptcy support services to Loancare. Loancare also brings indemnification and account stated claims against Defendants.

Before the Court is TCS's motion to dismiss. For the reasons that follow, the motion is granted.

## I. Background

The following facts are taken from LoanCare's complaint, the contracts at issue in this case, and the email correspondence regarding LoanCare's attempts to recover the amount in question from TCS.[1]

[1] In considering a motion to dismiss for failure to state a claim, the court may look only to the complaint, documents that are attached as exhibits to, incorporated by reference in, or integral to the complaint, and matters of which judicial notice may be taken. *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). "On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011)). The same goes for a defendant's responses to a plaintiff's presentation of an account when evaluating a motion to dismiss an account stated claim. *See, e.g.*, *Varn v. Orchestrade, Inc.*, No. 19-CV-2875, 2020 WL 13558690, at *3 n.5, *16

LoanCare, LLC is a loan subservicer organized and existing under the laws of the State of Virginia, with its principal place of business in Virginia Beach, Virginia. (ECF No. 1-1 ("Compl.") ¶¶ 1, 5.) TAIC is a New York corporation, and Tata Consultancy Services Limited is a corporation organized under the laws of the Republic of India, with its principal place of business in Mumbai, India. (*Id.* ¶¶ 2-3.)

In 2016, LoanCare entered into a Master Services Agreement ("MSA") with TCS for TCS to provide certain professional services to LoanCare. (*Id.* ¶ 5.) In January 2019, LoanCare and TCS entered into a Statement of Work ("SOW"), in which TCS agreed to provide certain bankruptcy support services to LoanCare. (*Id.* ¶ 6.) The MSA provided that TCS was to provide LoanCare with "professional services for the processing of [LoanCare's] business processes operations outsourced to [TCS] and any other services . . . outsourced to [TCS] in accordance with this Agreement from time to time during the term of this Agreement." (ECF No. 14-1 ("MSA") at 2.) The MSA further provided that the "scope and description of specific services" and the "project execution plan" were to be "mutually agreed and set forth in [an] individual Statement of Work." (*Id.*; *see also* Compl. ¶ 6.) In turn, Section 4 of the SOW provided that TCS was to provide bankruptcy support services, including proof of claim preparation, validation, and follow-up; motion for relief preparation, validation, and follow-up; bankruptcy discharge, dismissal, and relief granted processing; payment change notice filing preparation; and post-petition fees and notice filing preparation. (Compl. ¶ 7; *see also* ECF No. 14-2 ("SOW") at 4.)

---

(E.D.N.Y. Mar. 30, 2020) (considering on a motion to dismiss a denial email not explicitly mentioned in a complaint because it was "integral to Plaintiff's claim that he is owed money that he demanded from Defendants"). Accordingly, the Court draws some of the following facts from the contract at issue and the parties' communications regarding the alleged amount owed, which TCS attached to its motion to dismiss. (*See* ECF No. 14.)

Section 2.2 of the MSA provided that LoanCare was "entitled to and . . . responsible for establishing" Processing Norms for the covered transactions, including "general or special guidelines, norms, instructions, applicable law, regulation and agency guidance" that LoanCare provided to TCS. (MSA at 4.) Section 4 of the SOW further required LoanCare to provide TCS with Standard Operating Procedure ("SOP") manuals and TCS to provide its bankruptcy support services in compliance with these SOPs. (Compl. ¶¶ 7, 14; *see also* SOW at 4.)

Several other provisions of the MSA and SOW are relevant. First, with respect to indemnification, Section 2.2 of the MSA further provided in relevant part that "[TCS] shall indemnify [LoanCare] for any losses or claims against [LoanCare], arising from [TCS's] failure to comply with the provisions of this [sic] Processing Norms." (MSA at 4.) Similarly, Section 16 of the SOW provides that "[TCS] shall defend, indemnify, and hold harmless [LoanCare] from and against and third-party suit, proceeding, claim damages, costs and expenses (including, reasonable attorney's fees) to the extent relating to or arising from . . . errors in services and noncompliance with SOPs by [TCS]." (SOW at 18.)

Second, Section 6.3 of the MSA provides that, "[e]xcept to the extent specifically agreed herein or in the relevant Statement of Work, [TCS] shall not be liable to [LoanCare] for Operational Losses." (MSA at 9.). "Operational Loss" is defined as

> any loss or damage incurred by [LoanCare] caused directly and entirely as a result of [TCS's] failure to comply with a Processing Norm due to human error without any intentional non-compliance of Processing Norm by [TCS] and which results in breach of [TCS's] obligation under this Agreement and that can be quantified and documented with reasonable documentary proof evidencing the same; provided however that [LoanCare] had taken all reasonable measures to avoid/mitigate the Operational Loss suffered by it due to failure by [TCS].

(*Id.*) Finally, the MSA provides for a cap on Operational Losses if liability does attach. (*Id.*) The SOW contains no additional information about Operational Losses. (*See generally* SOW.)

Third, under Section 5.2 of the MSA, TCS warranted that it would provide the services in question in a "workmanlike manner by individuals who are appropriately skilled and trained in the performance of such Services." (MSA at 7.) Fourth, Section 10.5(a) of the MSA provides that the MSA and SOW are governed by and construed in accordance with the laws of the State of New York, "without giving effect to [the] conflicts of law principles thereof." (Compl. ¶ 11; *see also* MSA at 13.)

Upon completion of the SOW, LoanCare conducted an audit of the loan files for which TCS provided its bankruptcy support services during the SOW term. (Compl. ¶ 16.) "The audit revealed nearly $200,000 in escrow items, fees, costs, and payments that are now uncollectible (the 'Uncollectible Amounts') on the loan files serviced by LoanCare." (*Id.*) According to LoanCare, "[t]hese amounts are directly attributable to TCS's failure to include all pre-petition amounts on proofs of claim and to file the required notices of payment change and post-petition fees in the relevant bankruptcy cases," as was required by the Processing Norms in the SOW. (*Id.*)

After the audit was completed, LoanCare presented the Uncollectible Amounts to TCS. (Compl. ¶ 20.) Specifically, on May 14, 2024, LoanCare requested reimbursement for "non-claimable items" totaling $127,218.61 and attached a spreadsheet detailing reasons for each loss, loan by loan. (ECF Nos. 14-3, 14-4; *see also* Compl. ¶ 20.) On May 15, 2024 and May 17, 2024, TCS responded requesting confirmation of the applicable SOW and noting that it no longer had system or entitlement access to validate the spreadsheet. (ECF No. 14-5 at 3-4.) On June 5, 2024, TCS rejected LoanCare's claim for reimbursement, arguing, *inter alia*, that the alleged losses were Operational Losses barred by Section 6.3 of the MSA. (ECF No. 14-5 at 2.) LoanCare then made a formal demand to TCS for indemnification and payment of the

Uncollectible Amounts on December 18, 2025. (Compl. ¶ 20.) TCS denied this demand on January 28, 2026, again relying on Section 6.3 of the MSA and further arguing that Section 16 of the SOW (the indemnification provision) only applied to third-party claims. (*Id.* ¶ 21; ECF No. 14-6.)

LoanCare filed this action on May 4, 2026, in New York state court, and TCS timely removed the case on June 5, 2026.[2] (*See* ECF No. 1.) LoanCare alleges that TCS breached the MSA and SOW "by, among other things, failing to properly perform the Services as required under the SOW, including failing to include all pre-petition amounts on proofs of claim and failing to file the required notices of payment change and post-petition fees in the relevant bankruptcy cases, in violation of the SOPs and Processing Norms, and in breach of TCS's warranty to perform the Services in a workmanlike manner." (Compl. ¶ 26.) LoanCare thus asserts breach of contract, indemnification, and account stated claims, seeking $200,000 in damages along with appropriate interest, costs, and attorney's fees for each of these claims. (Compl. ¶¶ 23-37.) TCS filed a motion to dismiss the complaint on August 17, 2026 (ECF No. 12), along with an accompanying memorandum of law (ECF No. 13). Loancare opposed the motion to dismiss on September 11, 2026 (ECF No. 16 ("Opp.")), and TCS filed a reply in support of its motion on September 25, 2026 (ECF No. 17).

---

[2] As alleged in the notice of removal, the members of LoanCare, LLC are citizens of Delaware and Florida, Defendants are citizens of New York and India, and the amount in controversy exceeds $75,000, exclusive of interest and costs. (ECF No. 1 ¶¶ 9-12.) This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1332(a). Because Defendant TAIC is a citizen of New York, LoanCare could have moved to remand this case to state court pursuant to the forum defendant rule. *See* 28 U.S.C. § 1441(b)(2). However, because LoanCare failed to do so within thirty days of TCS's removal, the Court cannot *sua sponte* remand. *See Hamilton v. Aetna Life & Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam).

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. Discussion

TCS argues that LoanCare's complaint fails to state a claim for breach of contract, indemnification, or account stated, both on the merits and because the latter two claims are duplicative of the first. The Court addresses each claim in turn.

### A. Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege (1) an agreement; (2) adequate performance by the plaintiff; (3) breach by defendant; and (4) damages. *See, e.g.*, *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). TCS contends that the complaint fails to state a claim for breach of contract because Section 6 of the MSA forecloses the damages it seeks. The Court agrees.

Section 6 prevents TCS from being held liable by LoanCare for Operational Losses, which are defined as losses caused "directly and entirely as a result of [TCS's] failure to comply with a Processing Norm due to human error." (MSA at 9.) The Processing Norms include the SOPs provided by LoanCare under the SOW. (Compl. ¶ 14.) LoanCare alleges that the Uncollectible Amounts are "directly attributable" to TCS's failure to comply with conditions

"specified in the SOW": namely, failures to comply with "the SOPs and Processing Norms." (*Id.* ¶¶ 16, 26.) In other words, LoanCare alleges that the Uncollectible Amounts are exclusively due to TCS's failure to comply with the Processing Norms, which the MSA specifically excludes from TCS's potential liability.

LoanCare's arguments to the contrary are unavailing. First, LoanCare argues that the MSA's definition of Operational Losses includes factors other than failure to comply with the Processing Norms, such as the absence of intentional noncompliance, the ability to be quantified and documented with reasonable documentary proof, and LoanCare's own reasonable measures to avoid or mitigate the losses. (Opp. at 15-17; *see also* MSA at 9.) LoanCare is correct that the MSA does set forth these additional factors in defining "Operational Loss."[3] But LoanCare has not even attempted to allege that the Uncollectible Amounts fail to satisfy any of these factors. Instead, its sole allegation is that the Uncollectible Amounts flow exclusively from TCS's failure to comply with the Processing Norms. LoanCare offers no other factual allegations supporting a plausible inference that the Uncollectible Amounts flowed from intentional noncompliance, that it cannot be quantified and documented with reasonable documentary proof, or that LoanCare itself took reasonable measures to avoid or mitigate the losses. "While the Court must and does construe all inferences in [Plaintiff's] favor, it 'cannot invent factual allegations that [Plaintiff] has not pleaded.'" *Ambrose v. Dell*, No. 12-CV-6721, 2016 WL 894456, at *3 (S.D.N.Y. Mar. 8,

---

[3] While the Court has a duty to construe all contractual ambiguities in the plaintiff's favor when ruling on a motion to dismiss for failure to state a claim for breach of contract, *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005), LoanCare's argument does not turn on an ambiguity in the MSA, the terms of which are plain. It simply argues that the Uncollectible Amounts may not qualify as Operational Losses because of unalleged facts that may go to the other factors specified in Section 6.3. The core of this disagreement is thus about whether LoanCare has alleged sufficient facts for the Court to infer that Section 6.3's carveout applies—not the meaning of the contractual terms themselves.

2016) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alteration adopted)). The Court also cannot resolve the motion to dismiss based on "theories spun out in plaintiff['s] opposition papers"; it must be "directed to the complaint." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 301 (S.D.N.Y. 2005); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

In short, although LoanCare argues that the question of whether the Uncollectible Amounts are Operational Losses is a factual question that cannot be resolved at the motion-to-dismiss stage and instead requires discovery (Opp. at 12, 16-17), the Court need not and does not make a final factual determination at this juncture. Rather, the Court must evaluate whether LoanCare has even alleged facts sufficient to plausibly claim that the Uncollectible Amounts are not Operational Losses. It has not. Absent additional pleadings plausibly alleging that the Uncollectible Amounts do *not* qualify as Operational Losses, the only information provided by LoanCare indicates that they do—therefore excluding TCS from liability.

LoanCare next argues that the indemnification clauses in the MSA and SOW trigger the exception language in Section 6.3 of the MSA (i.e., "Except to the extent specifically agreed upon herein or in the relevant Statement of Work") and thus render TCS liable for Operational Losses. (Opp. at 13.) For the reasons explained below in Section III.B, the indemnification clauses do not save LoanCare's claim here, since the indemnification clauses apply only to third-party disputes.

LoanCare also contends that Section 9.1 of the SOW, which protected LoanCare from the payment of any "fees for any hours of work incurred by [TCS] related to [TCS's] delay, error, or noncompliance with any SOPs" (SOW at 10), shows that "the parties did not intend Section 6.3

to immunize TCS from the consequences of its own errors." (Opp. at 14.) But this provision relates only to payment for extra work incurred by TCS, not to all expenses flowing from TCS's errant conduct. It cannot be read to wholesale invalidate Section 6.3 of the MSA, especially when the terms are compatible. *See Matter of Bombay Realty Corp. v. Magna Carta*, 100 N.Y.2d 124, 127 (2003) ("One portion of [a contract] should not be read so as to negate another portion."). Section 9.1 merely absolves LoanCare from paying TCS for any extra labor performed due to TCS's own errors; it does not put TCS on the hook for Operational Losses.

Finally, LoanCare argues that TCS breached their contract because it failed to perform the services in question in a "workmanlike manner" under Section 5.2 of the MSA. (Compl. ¶ 26; Opp. at 14; *see* MSA at 7.) Yet LoanCare offers no factual allegations to support this contention. It does not allege that TCS's specific failures to comply with the Processing Norms (to "include all pre-petition amounts on proofs of claim and to file notices of payment change and post-petition fees in relevant bankruptcy cases" (Compl. ¶ 16)) constituted a failure to exercise "the degree of care and skill that a reasonably prudent, skilled and qualified person would have exercised under the circumstances"—for instance, by alleging that inclusion of these amounts and fees is typical in the industry. *Milau Assocs. v. N. Ave. Dev. Corp.*, 42 N.Y.2d 482, 488 (1977). And although LoanCare suggests that this warranty "reaches broader performance deficiencies" than the Processing Norms ("including systemic failures, inadequate skill or training, and other non-workmanlike performance that may not be attributable 'directly and entirely' to isolated human error"), LoanCare again alleges only that the Uncollectible Amounts are directly attributable to TCS's failure to comply with the Processing Norms that LoanCare supplied. (Opp. at 14.).

In sum, the complaint contains no allegations that would allow this Court to infer that failure to comply with the Processing Norms is itself un-workmanlike, or that the Uncollectible Amounts are due to something other than this failure of compliance that falls within the warranty's broader reach. And as above, LoanCare's suggestion that discovery is necessary to determine whether TCS's performance failures were instead due to, for instance, "systemic deficiencies" is inapposite at this juncture. (Opp. at 12.) This conjecture neither builds on nor itself constitutes factual allegations, and a plaintiff "cannot avoid dismissal by claiming that discovery will reveal a basis for [its] claim." *In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021). LoanCare has therefore failed to state a claim for breach of contract.

**B. Indemnification**

TCS argues that LoanCare's claim for indemnification should be dismissed because it is duplicative of its breach of contract claim. "Two claims are duplicative if they 'arise from the same facts and do not allege distinct damages.'" *Morgulis v. Bus Patrol Am., LLC*, No. 25-CV-1224, 2026 WL 603607, at *1 (2d Cir. Mar. 4, 2026) (summary order) (alteration adopted) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (2d Dep't 2008)); *see also Demurjian v. Demurjian*, 139 N.Y.S.3d 192, 192 (1st Dep't 2021) (applying this rule to indemnification and breach of contract claims); *Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 1165077, at *19 (S.D.N.Y. Mar. 26, 2021) (same). Here, LoanCare's indemnification claim arises from the same alleged facts: TCS's failure to comply with the Processing Norms. (*Compare* Compl. ¶ 26 (asserting TCS's breach was its "failing to properly perform the Services as required under the SOW, including failing to include all pre-petition amounts on proofs of claim and failing to file the required notices of payment change and post-petition fees in the relevant bankruptcy cases") *with id.* ¶ 30 (alleging that TCS's errors giving rise to indemnity

"constitute errors in services and noncompliance with SOPs within the meaning of Section 16 of the SOW").) LoanCare also seeks identical damages on both claims: at least $200,000 in losses, plus interest, costs, and attorney's fees. (*See id.* ¶¶ 27, 30.) The indemnification claim is therefore duplicative of the breach of contract claim, and it must be dismissed accordingly. *See Demurjian*, 139 N.Y.S.3d at 192.

But even assuming that LoanCare could assert this claim in the alternative, LoanCare still fails to state a claim for indemnification. Under New York law, "[w]here . . . the contract does not 'exclusively or unequivocally refer to claims between the parties themselves,' we will presume that indemnification extends only to third-party disputes." *Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 283 (2d Cir. 2013) (alteration adopted) (quoting *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492 (1989)); *see also id.* (cautioning against "the inference that indemnification clauses apply to litigation between the parties in the absence of express wording"). Here, Section 2.2 of the MSA neither exclusively nor unequivocally refers to interparty disputes, and Section 16 of the SOW refers exclusively to "third-party suit[s], proceeding[s], claim[s], damages, costs and expenses." (MSA at 4; SOW at 18.)

LoanCare's arguments to the contrary do not offer a basis for disturbing this longstanding principle. LoanCare first argues that Section 2.2 "does not use [sic] conventional 'indemnify and hold harmless' formulation examined in *Hooper*" (e.g., it "does not enumerate liabilities, defense costs, or attorneys' fees") and it "expressly ties TCS's obligations to losses arising from TCS's own failure to comply with the Processing Norms." (Opp. at 20.) As a result, LoanCare contends that the presumption that indemnification provisions pertain only to third-party claims does not apply here. But New York law does not require the contractual language to be so

specific to maintain this presumption.[4] *See, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 416 (S.D.N.Y. 2011) ("[T]he default presumption in New York courts is that indemnification involves liabilities, *losses, or claims* associated with third-party suits, rather than contractual damages or losses between the contracting parties themselves." (emphasis added)); *Zama Cap. Advisors LP v. Universal Ent. Corp.*, No. 24-CV-1577, 2025 WL 3640068, at *4 (S.D.N.Y. Dec. 16, 2025) (rejecting argument that narrow textual analysis was sufficient to overcome default presumption where "the [indemnification] clauses are replete with other references to litigation that are in line with New York case law on the presumptive meaning of indemnification").

Moreover, when read as a whole, the indemnification provision here uses this kind of "conventional" formulation to characterize indemnity, including when describing LoanCare's own agreement to indemnify TCS. (*See* MSA at 4 ("[LoanCare] agrees to indemnify, defend and hold [TCS] . . . harmless from any and all claims, actions, damages, liabilities, costs and expenses, including but not limited to reasonable attorney's fees and expenses, arising out of or resulting from [TCS's] compliance with Processing Norms.").) Other aspects of the MSA also point clearly to the default presumption of third-party actions. (*See id.* (Section 2.2 further

---

[4] In so holding, the Court acknowledges that LoanCare relies on several nonbinding cases that have reached a different conclusion. *See, e.g.*, *Crossroads ABL LLC v. Canaras Cap. Mgmt., LLC*, 963 N.Y.S.2d 645, 546-46 (1st Dep't 2013); *Shah v. 20 E. 64th St., LLC*, 198 A.D.3d 23, 24 (1st Dep't 2021). However, the provision in *Shah* explicitly "referred to intraparty [sic] claims," *id.*, such as explicitly indemnifying plaintiffs from claims arising from defendant's "breach of the License agreement," *see Shah v. 20 East 64th St. LLC*, No. 156305/15, 2017 WL 4284553, at *2 (N.Y. Sup. Ct. Sep. 26, 2017) (alteration adopted) (quoting indemnification provision). In any event, "the Court finds that the indemnification provisions at issue in those cases are distinguishable from" the provision here "in relevant respects," and "the Court does not believe that the above cases provide reliable guidance in determining how the New York Court of Appeals would interpret" this provision. *In re Platinum-Beechwood Litig.*, 378 F. Supp. 3d 318, 326 n.3 (S.D.N.Y. 2019) (distinguishing *Crossroads*).

providing that "[LoanCare] and [TCS] acknowledge and agree that the provision of Services under an SOW may require [TCS] to interact with the customers and suppliers of [LoanCare]"); *id.* at 10 (Section 7.3 referring to the right of the indemnifying party to notice, right to "sole control of the defense or settlement," cooperation with said party in "assisting the defense," allowing the indemnifying party to participate with "counsel of its own choosing," and avoiding that may "prejudicially affect the chances of settlement or defense").) As this Court has held before, such references (e.g., to a "notification requirement" and a "settlement consultation requirement") "are unmistakably applicable to third-party claims only," so "there is no 'clear implication' from the agreement 'of an unmistakable intent to indemnify' against interparty claims." *Stephens Inc. v. Flexiti Fin. Inc.*, No. 18-CV-8185, 2019 WL 2725627, at *4-6 (S.D.N.Y. July 1, 2019) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 457 (2d Cir. 1990)).

Finally, LoanCare argues that because Section 16 of the SOW explicitly limits the indemnification to third-party matters, the fact that the MSA does not do so "confirms the broader language of Section 2.2 was deliberate, not an oversight." (Opp. at 21-22.) But the MSA itself states that "[i]f there is any inconsistency or conflict between the provisions of the main body of this Agreement and the provisions of any Statement of Work, the provisions of the Statement of Work shall be controlling and shall govern." (MSA at 14.) And as discussed, the SOW explicitly limited indemnification in this case to third-party matters. (*See* SOW at 18.) LoanCare therefore cannot bring an indemnification claim even as an alternative to its breach of contract claim because the indemnification provisions at issue do not pertain to interparty disputes such as this one.

**C. Account Stated**

TCS seeks dismissal of LoanCare's account stated claim on the ground that it is duplicable of the breach of contract claim. "[W]here . . . the plaintiff's account stated claim seeks the same damages as the plaintiff's breach of contract claim, the account stated claim is duplicative of the contractual claim and must be dismissed." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 510 (S.D.N.Y. 2022). Here, LoanCare seeks the same $200,000 in damages (plus interests, costs, and attorney's fees) based on the account stated claim that it seeks for its breach of contract claim. (*See* Compl. ¶¶ 27, 37.) LoanCare even admits that it is the "contractual relationship" between itself and TCS which "[gave] rise to the debt." (*Id.* ¶ 35.) The account stated claim thus must be dismissed as duplicative of LoanCare's breach of contract claim.

LoanCare also fails to plausibly allege the indebtedness required for an account stated claim. "The viability of such a claim depends on 'the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated. It cannot be used to create liability where none otherwise exists.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54-55 (2d Cir. 2011) (quoting *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516 (2d Dep't 1998)). LoanCare fails to plead facts that would demonstrate indebtedness, because—as discussed above—the contract between LoanCare and TCS barred TCS from incurring liability based on Operational Losses, and LoanCare does not plausibly allege that the Uncollectible Amounts are not Operational Losses. Instead, the only facts LoanCare does allege indicate that they are. LoanCare therefore does not allege facts sufficient to plead the requisite indebtedness.

Even assuming that LoanCare intended to plead this claim in the alternative to its breach of contract claim, it still fails to state an account stated claim. "To prevail on a claim for account

stated under New York law, a plaintiff must establish that (i) an account was presented; (ii) it was accepted as correct; and (iii) the debtor promised to pay the amount stated." *Microban Prods. Co. v. API Indus., Inc.*, No. 14-CV-41, 2014 WL 1856471, at *16 (S.D.N.Y. May 8, 2014). LoanCare fails to plead facts sufficient to make out a claim under the second and third elements of this test. TCS explicitly rejected LoanCare's May 14, 2024 demand on June 5, 2024. (ECF No. 14-5 at 2 ("[W]e do not see a basis for reimbursement here. . . . We thereover respectfully deny the request.").) As LoanCare itself alleges in its complaint, TCS also explicitly rejected LoanCare's December 18, 2025 demand on January 28, 2026. (Compl. ¶ 21 ("TCS denied the Demand."); *see also* ECF No. 14-6 ("TCS therefore respectfully denies this request.").)

LoanCare again argues that the question of whether these rejections were sufficient under the second factor is a factual issue appropriate for resolution at a later stage in the litigation (Opp. at 24-25), but it has again failed to allege facts plausibly establishing that TCS accepted and promised to pay this debt. Instead, the facts alleged in the complaint indicate that TCS outright refused to do so, and the other documents integral to this case indicate the same. "Where, as here, there is evidence that the defendant disagrees on the amount or fact of a debt, a claim for an account stated is properly dismissed." *Bendavid v. Bendavid*, No. 97-CV-6758, 1997 WL 737678, at *3 (S.D.N.Y. Nov. 28, 1997). There is also no evidence that TCS's responses were untimely. *See, e.g.*, *Feldman v. Talon Paint Prods., Inc.*, No. 1-CV-5657, 2002 WL 31385826, at *7 (S.D.N.Y. Oct. 22, 2002) (Chin, J.) (first objection written within "one

month after the [plaintiff] said its first bill" constituted objection "within a reasonable time"). LoanCare thus fails to state a claim for account stated.[5]

### D. Leave to Amend

Finally, LoanCare requests leave to amend its complaint in the event that TCS's motion to dismiss is granted. (Opp. at 26.) TCS opposes this request on the grounds that amendment would be futile. (ECF No. 17 at 16.) Although LoanCare has not specified how it would cure any deficiencies in its complaint if granted leave to do so, it is not obvious that amendment would necessarily be futile. LoanCare could conceivably be able to plead additional facts that exclude the Uncollectible Amounts as Operational Losses. LoanCare also has not previously amended its complaint in this action. Accordingly, leave to amend is granted.

## IV. Conclusion

For the foregoing reasons, TCS's motion to dismiss is GRANTED. LoanCare is granted leave to amend its complaint if it can allege facts that state a claim consistent with this Opinion, provided that any amended complaint must be filed within four weeks of the date of this Opinion and Order. LoanCare may also file a letter within that time indicating that it does not plan to amend its complaint, at which point the Court will enter final judgment, permitting an appeal. Failure to file an amended complaint or a letter within that time will result in entry of final judgment of dismissal. The Court will entertain any motions for attorney's fees following entry of final judgment.

---

[5] Because the Court concludes that the complaint fails to state a claim as to each of the claims, the Court need not reach the consequential damages and statute of limitations questions raised by the parties.

The Clerk of Court is directed to close the motion at Docket Number 12.

SO ORDERED.

Dated: October 23, 2026
New York, New York

J. PAUL OETKEN
United States District Judge